UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE ROMAN CATHOLIC BISHOP OF OAKLAND BANKRUPTCY AUTOMATIC STAY APPEAL, | Case No. 25-cv-06836-JSC |
| This Document Applies to: | **ORDER RE: APPEAL OF RELIEF FROM AUTOMATIC STAY** |
| ALL CASES | Re: Dkt. No. 1 |

The Roman Catholic Bishop of Oakland's ("Debtor's") filing of a voluntary chapter 11 petition in 2023 automatically stayed hundreds of sexual abuse claims pending against it in state court. (Bankr. Dkt. Nos. 1, 19.)[1] On June 25, 2025, the Official Committee of Unsecured Creditors of the Roman Catholic Bishop of Oakland ("the Committee") moved for relief from the automatic stay as to six state court cases against the Debtor. (Bankr. Dkt. No. 2093.) The bankruptcy court granted the motion and terminated the automatic stay "to allow six State Court Actions to proceed, as directed by the State Court." (Bankr. Dkt. No. 2168 at 2.) Several of Debtor's insurers ("Insurers") now appeal the bankruptcy court's order. (Dkt. No. 1.)[2] Having carefully considered the parties' submissions, the Court AFFIRMS the bankruptcy court.

The bankruptcy court operated within its broad latitude under section 362(a) when it

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents. (Bankr. Dkt. No.) indicates filings on Bankruptcy Docket No. 23-40523, and pinpoint citations are to the ECF-generated page numbers at the bottom of the documents.

[2] Insurer-Appellants include Westport Insurance Corporation f/k/a Employers Reinsurance Corporation; London Market Insurers; Insurance Company of North America, Westchester Fire Insurance Company; Pacific Indemnity Company; Pacific Employers Insurance Company; Continental Casualty Company; Travelers Casualty & Surety Company f/k/a Aetna Casualty & Surety Company. (Dkt. No. 1-1 at 1-4.)

terminated the automatic stay as to six state court cases and allowed the state court to select those six cases. The bankruptcy court also did not abuse its discretion in finding cause for relief from the stay. And Insurers' arguments the Committee lacked standing to bring its motion or the order violates 11 U.S.C. § 1123's requirements for a reorganization plan are unavailing.

**BACKGROUND**

On October 13, 2019, California enacted Assembly Bill 218 ("AB 218"), which "revived the statute of limitations for individuals to file civil lawsuits for child sexual abuse." (Bankr. Dkt. No. 19 ¶ 84.) In response, many plaintiffs filed cases in California state court alleging sexual abuse by clergy. (*Id.*) In 2020, Judicial Council Coordination Proceeding ("JCCP") 5108 consolidated several cases as the "Northern California Clergy Cases" in the California Superior Court for Alameda County ("Coordinated Proceedings"). (Bankr. Dkt. No. 1461-1.)

Debtor filed its voluntary chapter 11 petition on May 8, 2023. (Bankr. Dkt. No. 1.) At that time, "there were approximately 332 separate, active lawsuits or mediation demands pending against the Debtor filed by plaintiffs alleging sexual abuse by clergy or others associated with the Debtor." (Bankr. Dkt. No. 19 ¶ 84.) According to Debtor, it "ha[d] neither the financial means nor the practical ability to litigate all of the abuse claims in state court," and the bankruptcy proceeding would "allow all of the claims to be filed and decided in a single forum" and "ensure that all meritorious abuse claims be paid on a fair and equitable basis pursuant to an approved plan." (*Id.* ¶ 85.) Pursuant to 11 U.S.C. § 362(a), Debtor's chapter 11 petition automatically stayed all pending state court litigation.

On November 20, 2024, the Committee moved to terminate the automatic stay for six state court cases to proceed to jury trial "solely for purposes of liquidation and not collection against the Debtor." (Bankr. Dkt. No. 1460 at 9 ("First Motion").) According to the Committee, relief from the automatic stay would "help the parties gain clarity on the value of Survivor claims, [] unlock the liability insurance assets, and [] set this case on a path towards resolution." (*Id.*) The Committee assured the court it would not "cherry-pick the cases that move to trial." (*Id.* at 10.) Instead, "the State Court [would] select the cases that proceed to trial" based on an "order entered in the Coordination Proceedings setting forth the criteria and selection process for bellwether

United States District Court
Northern District of California

trials." (*Id.* at 9.)  Debtor and Insurers opposed the First Motion.  (Bankr. Dkt. Nos. 1581, 1583, 1585, 1589, 1591.)

The bankruptcy court held argument on the First Motion on January 8, 2025; January 16, 2025; and January 21, 2025.  (Bankr. Dkt. Nos. 1630, 1659, 1667.)  The parties explained a new judge had been recently assigned to the Coordinated Proceedings, the anticipated process for the state court identifying which cases would proceed to trial, and the timing of such trials.  (*See, e.g.*, Bankr. Dkt. No. 1630 at 18-24, Bankr. Dkt. No. 1659 at 55-63.)  In response, the bankruptcy court raised concerns "really only one of the six advertised potential bellwether actions is potentially ready anytime soon," which "undercuts the practical effect and the practical benefit of" terminating the automatic stay.  (Bankr. Dkt. No. 1667 at 17.)  In addition, because the new presiding judge had not yet held a hearing on the Consolidated Proceedings, the bankruptcy court was "not sure how that judge would otherwise want to handle matters."  (*Id.*)  So, the bankruptcy court stated:

> [B]ecause of my uncertainty about how fast we would get to anything that looks like a helpful data point, for the moment, I'm going to deny the motion for relief from stay, but it's very much without prejudice because things may change, and it may be that it's something that will be very helpful in the future.  I don't have the sense that it would be helpful now.

(*Id.*)  The bankruptcy court subsequently denied the Committee's motion without prejudice for the reasons stated in the hearings.  (Bankr. Dkt. No. 1721.)

After the Debtor filed a Third Amended Plan of Reorganization, (Bankr. Dkt. No. 1830), and the plaintiffs with claims against Debtor overwhelmingly rejected it, (Bankr. Dkt. No. 2040), the Committee filed a renewed motion to lift the automatic stay, (Bankr. Dkt. No. 2093 ("Renewed Motion")).  Again, the Committee argued lifting the stay as to six cases pending against Debtor, "solely for purposes of liquidation and not collection against the Debtor," would "help the parties gain clarity on the value of Survivor claims, [] unlock the liability insurance assets, and [] set this case on a path toward resolution."  (*Id.* at 10.)  The Committee also assured the bankruptcy court the state court, rather than the Committee, would pick the state court actions.  (Bankr. Dkt. No. 2129 at 8.)  And Debtor and Insurers again opposed relief from the stay.  (Bankr.

Dkt. Nos. 2112, 2115, 2117, 2120.)

At a July 16, 2025 hearing, the bankruptcy court emphasized the automatic stay is a "malleable and flexible" tool "to facilitate . . . in the broadest possible way, all the opportunities to reach either a fair liquidation or a feasible reorganization." (Bankr. Dkt. No. 2158 at 78, 80.) The court first rejected Insurers' arguments the Committee lacked standing to bring the Renewed Motion because the Committee's "purpose is to try, among other things, to regulate the process by which we're going to get to a solution," and the Renewed Motion did not ask to release a particular party from the stay but rather formed "a more general and generic request by somebody who is looking at a case, and has a different theory on how it ought to progress." (*Id.* at 80-81.) The court also rejected the Insurers' argument under 11 U.S.C. § 1123(a)(4), which governs reorganization plans, because the Committee "is not a plan proponent," and the Renewed Motion merely offered a pathway for obtaining "information," rather than "classifying" and "treat[ing]" claims under a proposed reorganization plan. (*Id.* at 81.)

Ultimately, the bankruptcy court found "good cause reasons to lift the stay" and grant the Renewed Motion. (*Id.* at 84.) Given wide-ranging disagreement about the claims' value, the court determined even if the cases did not "quickly . . . turn into a trial and a verdict," "other good things could come from the ability to advance aspects of the litigation." (*Id.* at 83.) For example, even absent trials and verdicts, pretrial motions or expert depositions could provide "information" about the strengths of various claims, lead parties to form "resolutions by settlement," or simply help stakeholders measure the risks of "uncertain outcomes." (*Id.* at 49, 84.) The bankruptcy court found all this information would "help in focusing people on the need to come together as much as they can, to express what their differences are, and to try to get a resolution here that might even be consensual." (*Id.* at 84.) The court also found the state court judge "now has been on the job for six months," and it had "no reason not to trust his judgment, and even more profoundly, not to trust all [the parties] who would be in front of him telling him how he should be weighing and all these factors" to select the six cases for trial. (*Id.* at 82.)

So, on July 26, 2025, the bankruptcy court granted the Renewed Motion "for the reasons set forth on the record at the Hearing" and terminated the automatic stay "to allow six State Court

United States District Court
Northern District of California

Actions to proceed, as directed by the State Court." (Bankr. Dkt. No. 2168 at 2.) The bankruptcy court clarified the stay "remain[ed] in full force and effect for all other purposes including with respect to the enforcement of any judgment against the Debtor that may be obtained because of the termination of the automatic stay as provided above; *provided* that nothing herein shall prevent the entry of a judgment against the Debtor and/ or the initiation of proceedings consistent with California Insurance Code Section 11580(b)(2) once a judgement is entered." (*Id.* at 2-3.) Insurers appealed the bankruptcy court's order. (Bankr. Dkt. Nos. 2201, 2202, 2203, 2207.)

**DISCUSSION**

First, Insurers argue the bankruptcy court unlawfully delegated to the state court the choice of which six state court cases to release from the stay. Second, Insurers dispute the bankruptcy court's finding of cause to lift the stay. And Insurers also contend the Committee lacked standing to bring the Renewed Motion, and the order granting relief from the automatic stay violated 11 U.S.C. § 1123(a)(4).

**I.      JURISDICTION**

District courts have jurisdiction over "final judgments, orders, and decrees," as well as, "with leave of the court, [] other interlocutory orders and decrees" from bankruptcy court. *See* 28 U.S.C. § 158(a). "Congress has long provided that orders in bankruptcy cases may be immediately appealed if they finally dispose of discrete disputes within the larger case." *Bullard v. Blue Hills Bank*, 575 U.S. 496, 501 (2015) (quotation marks and citation omitted). "[F]iling a petition for bankruptcy automatically 'operates as a stay' of creditors' debt-collection efforts outside of the umbrella of the bankruptcy case." *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 589 U.S. 35, 37 (2020) (quoting 11 U.S.C. § 362(a)). So, "the adjudication of a motion for relief from the automatic stay forms a discrete procedural unit within the embracive bankruptcy case . . . [and] yields a final, appealable order when the bankruptcy court unreservedly grants or denies relief." *Id.* at 37-38.

The bankruptcy court's order granting relief from the automatic stay is therefore a final, appealable order over which this Court has jurisdiction.

5

## II.    STANDARD OF REVIEW

In general, district courts review bankruptcy courts' "findings of fact for clear error and conclusions of law de novo." *Northbay Wellness Grp., Inc. v. Beyries*, 789 F.3d 956, 959 (9th Cir. 2015) (citation omitted).  However, "[t]he decision to grant or deny relief from the automatic stay is committed to the sound discretion of the bankruptcy court, and [courts] review such [a] decision under the abuse of discretion standard." *In re Conejo Enters., Inc.*, 96 F.3d 346, 351 (9th Cir. 1996) (citations omitted).  So, the bankruptcy court's decision to grant relief from the automatic stay "will be reversed only if 'based on an erroneous conclusion of law or when the record contains no evidence on which [the bankruptcy court] rationally could have based that decision.'" *Id.* (citation omitted).

"[T]he district court functions as an appellate court in reviewing a bankruptcy decision and applies the same standards of review as a federal court of appeals." *In re Crystal Props., Ltd., L.P.*, 268 F.3d 743, 755 (9th Cir. 2001) (quotation marks and citation omitted).  So, to decide whether the bankruptcy court abused its discretion, the Court first "determine[s] de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested." *See United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009).  "If the [bankruptcy] court identified the correct legal rule," the Court "determine[s] whether the [bankruptcy] court's application of the correct legal standard was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Id.* (quotation marks and citation omitted).  "If any of these three apply," the bankruptcy court "abused its discretion by making a clearly erroneous finding of fact." *Id.*; *see also In re Advanced Med. Spa Inc.*, BAP No. EC-16-1087-KuMaJu, 2016 WL 6958130, at *3 (B.A.P. 9th Cir. Nov. 28, 2016) (applying *Hinkson* standard to appeal from order denying relief from automatic stay).

## III.    AUTHORITY TO DELEGATE SELECTION OF CASES

Federal district courts, and bankruptcy courts by reference, "have original and exclusive jurisdiction of all cases under title 11." *See* 28 U.S.C. § 1334(a); 28 U.S.C. § 157(a); *see also In re Gruntz*, 202 F.3d 1074, 1080 (9th Cir. 2000) ("By the plain wording of [section 1334], Congress has expressed its intent that bankruptcy matters be handled exclusively in a federal

forum." (citing *MSR Exploration, Ltd. v. Meridian Oil, Inc.*, 74 F.3d 910, 913 (9th Cir. 1996)).

Pursuant to 11 U.S.C. § 362(a), a debtor's filing of a chapter 11 bankruptcy petition automatically stays all claims for recovery against the debtor. *See* 11 U.S.C. § 362(a). "The automatic stay is self-executing" and "sweeps broadly, enjoining the commencement or continuation of any judicial, administrative, or other proceedings against the debtor." *In re Gruntz*, 202 F.3d at 1081. "The 'automatic stay gives the bankruptcy court an opportunity to harmonize the interests of both debtor and creditors while preserving the debtor's assets for repayment and organization of his or her obligations.'" *Id.* (quoting *In re MacDonald*, 755 F.2d 715, 717 (9th Cir. 1985)). The automatic stay is therefore "[c]entral to the bankruptcy case as to which exclusive Article I federal jurisdiction lies," *id.*, and "plays a vital and fundamental role in bankruptcy," *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581, 585 (9th Cir. 1993) (citations omitted).

Congress has also authorized bankruptcy courts to "[o]n request of a party in interest and after notice and a hearing, . . . grant relief from the stay . . . such as by terminating, annulling, modifying, or conditioning such stay[] for cause." *See* 11 U.S.C. § 362(d); *see also* 28 U.S.C. §§ 157(b)(1), (b)(2)(G) (providing "motions to terminate, annul, or modify the automatic stay" are "core" bankruptcy proceedings). "[B]y virtue of the power vested in them by Congress, the federal courts have the final authority to determine the scope and applicability of the automatic stay." *In re Gruntz*, 202 F.3d at 1083.

Insurers therefore argue the bankruptcy court unlawfully delegated its authority over the automatic stay by terminating the stay as to six state court cases but allowing the state court to select those six cases. Insurers primarily rely on *In re Gruntz*'s statement "[a]ny state court modification of the automatic stay would constitute an unauthorized infringement upon the bankruptcy court's jurisdiction to enforce the stay." *Id.* at 1082. But rather than impose a non-delegation principle, *In re Gruntz* applied the "well-established judicially declared rule that state courts are completely without power to restrain federal-court proceedings." *Id.* (quoting *Donovan v. City of Dallas*, 377 U.S. 408, 412-13 (1964)). So, "actions taken in violation of the automatic stay are void," and the bankruptcy court has no "obligat[ion] to extend full faith and credit to [state

court] judgments" entered in violation of the automatic stay. *Id.* at 1082 & n.3 (citing *In re Schwartz*, 954 F.2d 569, 571 (9th Cir. 1992)). In *In re Gruntz*, the Ninth Circuit therefore held when a state court proceeded with a criminal prosecution for unpaid child support despite the debtor's bankruptcy, the state court's determination the automatic stay did not apply to the criminal prosecution did not bind the bankruptcy court. *See id.* at 1077-78, 1084. So, rather than limiting bankruptcy courts' flexibility to grant relief from an automatic stay, *In re Gruntz* merely reinforced bankruptcy courts' "final authority to determine the scope and applicability" of any stay. *See id.* at 1083.

None of the other cases Insurers cite support their argument. *See, e.g.*, *In re McGhan*, 288 F.3d 1172, 1181 (9th Cir. 2002) (holding "only the bankruptcy court could [] grant relief" from a discharge order, which the plaintiff attacked in state court for lack of notice); *In re Dunbar*, 245 F.3d 1058, 1064 (9th Cir. 2001) (reversing a bankruptcy court's determination it was estopped from reconsidering the scope of an automatic stay when a state agency determined a claim fell outside the scope of the stay); *MSR Exploration, Ltd.*, 74 F.3d at 916 (holding a federal district court lacked jurisdiction to decide whether creditors' claims were maliciously filed in ongoing bankruptcy proceeding).

Ultimately, the Ninth Circuit has emphasized "section 362 gives the bankruptcy court wide latitude in crafting relief from the automatic stay." *In re Wardrobe*, 559 F.3d 932, 937 (9th Cir. 2009) (quoting *In re Schwartz*, 954 F.2d at 572). In light of this wide latitude to "terminat[e], annul[], modify[], or condition[]" the automatic stay, 11 U.S.C. § 362(d), the Court will not adopt Insurers' unprecedented argument section 362 does not allow a bankruptcy court to terminate the stay as to six cases and allow the state court and the stakeholders to determine those six cases.[3]

## IV.    CAUSE FOR LIFTING STAY

A bankruptcy court "shall grant relief from the [automatic stay]" upon a showing of

---

[3] However, the Court rejects the Committee's argument Insurers waived the non-delegation argument because Insurers raised their concerns in both the Renewed Motion briefing and the July 16, 2025 hearing. (Bankr. Dkt. No. 2158 at 65 (arguing the bankruptcy court "need[ed] to know which cases are going out," and telling the bankruptcy judge "that's actually your role. And with all respect to Judge Chatterjee, that's your job"); Bankr. Dkt. No 2117 at 10 n.9 (arguing "state courts cannot independently modify the automatic stay").)

"cause." *See* 11 U.S.C. § 362(d). So, "[t]o obtain relief from the automatic stay, the party seeking relief must first establish a *prima facie* case that 'cause' exists for relief under § 362(d)(1)." *In re Plumberex Specialty Prods., Inc.*, 311 B.R. 551, 557 (Bankr. C.D. Cal. 2004) (citations omitted). However, "'[c]ause' has no clear definition and is determined on a case-by-case basis." *In re Conejo*, 96 F.3d at 352 (quotation marks and citation omitted). So, "it is impossible to define for all relief from stay motions what will constitute a prima facie case of cause." *In re Advanced Med. Spa*, 2016 WL 6958130, at *5.

Courts in the Ninth Circuit consider the "non-exclusive" factors from *In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984), "in deciding whether to grant relief from [an] automatic stay to allow pending litigation to continue in another forum." *In re Kronemyer*, 405 B.R. 915, 921 (B.A.P. 9th Cir. 2009). Those factors are:

> (1) Whether the relief will result in a partial or complete resolution of the issues.
> (2) The lack of any connection with or interference with the bankruptcy case.
> (3) Whether the foreign proceeding involves the debtor as a fiduciary.
> (4) Whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases.
> (5) Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation.
> (6) Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question.
> (7) Whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties.
> (8) Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c).
> (9) Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f).
> (10) The interest of judicial economy and the expeditious and economical determination of litigation for the parties.
> (11) Whether the foreign proceedings have progressed to the point where the parties are prepared for trial.
> (12) The impact of the stay on the parties and the "balance of hurt."

*In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984) (citations omitted).

The bankruptcy court considered the relevant *Curtis* factors in finding cause to grant the Renewed Motion. As to the first *Curtis* factor, the bankruptcy court found advancing the state court litigation would help "get to a resolution" of the bankruptcy proceeding by illuminating

9

"information," advancing "resolutions by settlement," or reminding all stakeholders of the "uncertain outcomes" absent consensual resolution. (Bankr. Dkt. No. 2158 at 84.) As to the second *Curtis* factor, the bankruptcy court found interference with the bankruptcy case was not "terribly implicated here" because all the stakeholders would "have th[e] opportunity" to guide the cases through the state court. (*Id.* at 82.) And, in contrast to the First Motion, there was no longer "a plan out there, people [] talking" which could have "end[ed] up with something resolved" without lifting the stay. (*Id.* at 83.) Furthermore, given the recent rejection of the Third Amended Plan of Reorganization and future plan confirmation hearings, the court concluded granting relief from the stay could "create additional pressures on everybody" to "focus[] attention," and "try to get to a resolution here that might even be consensual." (*Id.* at 84.)

Insurers argue the bankruptcy court abused its discretion in finding cause to terminate the stay as to six court cases. Because the bankruptcy court applied the correct legal standard, the Court must decide whether its application of the standard "was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from facts in the record." *See Hinkson*, 585 F.3d at 1262 (quotation marks and citation omitted). Insurers first contend because the Committee "failed to submit any evidence or filings related to the six State Court Actions for which it sought stay relief, or even to the claims at issue in the Coordinated Proceedings," there were no facts in the record from which the bankruptcy court could draw an inference cause existed. (Dkt. No. 23 at 24.) But cause "is determined on a case-by-case basis." *See In re Conejo*, 96 F.3d at 352 (quotation marks and citations omitted). Here, the bankruptcy court found cause based in part on the status of its own proceedings, in which the creditors had recently—and overwhelmingly— rejected a proposed reorganization plan. Furthermore, across the First and Renewed Motions, the bankruptcy court held four hearings for the parties and discussed the status of the state court proceedings, in which the parties are also participants. So, given the bankruptcy court's familiarity with its own and the state court's proceedings, Insurers' argument the bankruptcy court relied on insufficient evidence to find cause is unavailing.

Insurers also argue because the stakeholders have a lot of information about settlement values through their experience and publicly available mass tort settlements, the bankruptcy

10

court's finding relief from the stay could provide useful information about claim values is "clearly erroneous." (Dkt. No. 23 at 25.) But despite access to this information, the stakeholders have not yet resolved the bankruptcy proceedings. So, it was not clearly erroneous for the bankruptcy court to conclude additional information may be useful. *See also In re Diocese of Buffalo, N.Y.*, 665 B.R. 198, 202 (Bankr. W.D.N.Y. 2024) ("With each passing day, the lack of settlement suggests the need to try a different approach."). Furthermore, the bankruptcy court's finding relief from the stay could provide useful information was not limited to information about claim values. The Committee argued pre-trial motions or expert depositions would develop stakeholders' opinions on the cases and willingness to accept risk in proceeding with them, and the bankruptcy court agreed even absent "a trial and a verdict, . . . the ability to advance some aspects of the litigation . . . . can only help." (Bankr. Dkt. No. 2158 at 49, 83.)

For the same reason, Insurers' contention the bankruptcy court could not plausibly find relief from the stay for six cases would aid in settlement without first finding those six cases are representative of all the cases in the Consolidated Proceedings is unavailing. Even if the six selected cases are not representative, the bankruptcy court's finding advancing aspects of the litigation could help achieve a consensual resolution remains plausible. Also plausible is the bankruptcy court's conclusion allowing six cases to proceed would "create additional pressure[]" to "focus[] people on the need to come together as much as they can, to express what their differences are and to try to get to a resolution here that might even be consensual." (*Id.* at 84.) *See also In re Diocese of Buffalo, N.Y.*, 665 B.R. at 202 ("By pushing litigants closer to a trial of tort claims, we hope that the parties may better appreciate their risks and the benefits of a consensual plan."). In addition, the bankruptcy court noted the stakeholders in the bankruptcy proceeding "would be in front of [the state court judge] telling him how he should be weighing and balancing all these factors," and so would "have that opportunity" to identify six useful cases to advance. (Bankr. Dkt. No. 2158 at 82.)

So, Insurers have not shown the bankruptcy court abused its discretion in finding cause to terminate the stay as to six state court cases. In light of bankruptcy courts' "wide latitude in crafting relief from the automatic stay," *In re Wardrobe*, 559 F.3d at 937 (quotation marks and

11

citation omitted), Insurers' argument other bankruptcy courts have approached relief from the automatic stay differently is unavailing.

## V.    THE COMMITTEE'S AUTHORITY TO BRING THE RENEWED MOTION

"[A] creditor's committee formed in a Chapter 11 case has a fiduciary duty to all unsecured creditors rather than to individual members of the committee." *In re Islet Sciences, Inc.*, 640 B.R. 425, 451 (Bankr. D. Nev. 2022) (citations omitted).  At least one bankruptcy court has therefore held a creditor's committee "lacks standing to assert rights on behalf of specific creditors in their individual capacity." *In re Bonert*, 619 B.R. 248, 254 (Bankr. C.D. Cal. 2020). Relying on *In re Bonert*, Insurers argue the Committee lacked standing to bring the Renewed Motion because the motion asserted rights to stay relief on behalf of six claims, rather than on behalf of all unsecured creditors.  But the Committee sought select stay relief as a potential pathway to reach a consensual resolution of Debtor's bankruptcy proceeding, which would benefit all unsecured creditors.  So, the Renewed Motion does not exclusively benefit the creditors whose claims will immediately advance.  Instead, as the bankruptcy court found, the Renewed Motion "c[ould] certainly be brought by a committee whose purpose is to try, among other things, to regulate the process whereby we're going to get to a solution."  (Bankr. Dkt. No. 2158 at 80.) And rather than a request for a "particular party to ask for relief from stay," the Committee made "a more general and generic request by somebody who is looking at a case, and has a different theory on how it ought to progress."  (*Id.* at 80-81.)  Finally, the Court "need not consider arguments" Insurers raise about the scope of a committee's authority under 11 U.S.C. § 1103(c) "for the first time in [their] reply brief."  *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (citation omitted).  So, the bankruptcy court did not err in refusing to deny the Renewed Motion on standing grounds.

## VI.    VIOLATIONS OF PLAN REQUIREMENTS

11 U.S.C. § 1123(a)(4) provides "a plan shall . . . provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest."  *See* 11 U.S.C. § 1123(a)(4).  Insurers argue lifting the automatic stay as to six state court cases without determining whether those six

United States District Court
Northern District of California

cases are representative violates section 1123(a)(4). But "[s]ection 1123 describes the required contents of a Chapter 11 plan," *see In re Transwest Resort Props., Inc.*, 881 F.3d 724, 728 (9th Cir. 2018) (citation omitted), not the bankruptcy court's power to modify or terminate the section 362(a) automatic stay. As the bankruptcy court noted, the Committee was "not a plan proponent" when it moved for relief from the stay. (Bankr. Dkt. No. 2158 at 81.) And because the bankruptcy court's order clarified the stay "remain[ed] in full force and effect . . . with respect to the enforcement of any judgment against the Debtor that may be obtained because of the termination of the automatic stay as provided above," (Bankr. Dkt. No. 2168 at 2-3), the stay relief does not inevitably prejudice claims in a hypothetical future plan. So, the bankruptcy court did not err in refusing to deny the Renewed Motion on section 1123(a)(4) grounds.

**CONCLUSION**

For the reasons stated above, the Court AFFIRMS the bankruptcy court's order terminating the automatic stay as to six pending state court actions for purposes of liquidation but not collection against Debtor.

**IT IS SO ORDERED.**

Dated: April 7, 2026

_____
JACQUELINE SCOTT CORLEY
United States District Judge